# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Jessica Martinez-Arriaga,

     Plaintiff

v.

Briggs Management LLC, et al.,

     Defendants

Case No.: 2:23-cv-01845-JAD-NJK

**Order Granting in Part Defendants'
Motion for Summary Judgment**

[ECF No. 39]

       Fat Tuesday bartender Jessica Martinez-Arriaga was fired just days after she informed her employer of three years that she was pregnant.[1]  So she sues that employer for pregnancy discrimination, hostile work environment, failure to reasonably accommodate her pregnancy, wrongful termination, intentional infliction of emotional distress, and negligent infliction of emotional distress.[2]  The employer moves for summary judgment on all her claims.[3]  Because there is a genuine issue of material fact as to whether Martinez-Arriaga experienced pregnancy discrimination and whether the employer failed to reasonably accommodate her pregnancy-related needs, the employer is not entitled to summary judgment on those claims.  But I grant summary judgment in its favor on the other claims because Martinez-Arriaga hasn't presented sufficient evidence to establish each of their required elements.  So this case proceeds to trial on Martinez-Arriaga's pregnancy-discrimination and reasonable-accommodation claims.  But first, I order the parties to a mandatory settlement conference with the magistrate judge.

---

[1] ECF No. 1-1 at 5, ¶ 18; ECF No. 39-8 at 3 (Oct. 24–Nov. 1 email thread between Martinez-Arriaga and Danielle Garrett).

[2] ECF No. 1-1 at 6–10, ¶¶ 26–53.

[3] ECF No. 39.

**Background**

Briggs Management Inc. and Briggs Management LLC[4] do business as Fat Tuesday, a chain restaurant known for its colorful frozen cocktails. Martinez-Arriaga worked for Briggs as a bartender at the Fat Tuesday inside the Miracle Mile Shops in Las Vegas, Nevada—known internally as its Harmon Corner location—from March 2018 until her October 2021 termination.[5] During that time, her schedule dwindled from five shifts per week to one, which she attributes to the COVID-19 pandemic and her evolving childcare responsibilities.[6] In October 2021, Martinez-Arriaga was five months pregnant and working a single weekly shift.[7] A new manager, Mike DuPont, had recently been assigned to the Harmon Corner location.[8]

Martinez-Arriaga recalls that, shortly before she was discharged, DuPont introduced himself as the new general manager, saying that he had been sent by upper management to "shake shit up" and "get it together."[9] At that meeting, DuPont announced that employees would be expected to work three days or a certain number of hours per week, and that they were expected to submit new schedules by the end of the week.[10] Whether DuPont demanded 20 or

---

[4] I refer to the defendants collectively as "Briggs" throughout this order.

[5] ECF No. 1-1 at 5, ¶ 16. *See also* ECF No. 39 at 2 (specifying that Martinez-Arriaga worked at the Harmon Corner location).

[6] ECF No. 39-2 at 22:1–24:13 (dep. of Martinez-Arriaga). I cite to CM/ECF pagination for all exhibits.

[7] ECF No. 39-8 at 3 (Oct. 24–Nov. 1 email thread between Martinez-Arriaga and Danielle Garrett); ECF No. 39-2 at 22:5–15 (testifying that she was only working on Saturday from September 2021 until her termination).

[8] ECF No. 39-2 at 11:1–6.

[9] *Id.* at 19:20–20:3 (noting that this introduction "was probably that last Saturday that I worked my regular . . . shift").

[10] *Id.* at 20:13–16.

30 hours at that initial meeting is disputed by the parties.[11]  Martinez-Arriaga's charge of discrimination and part of her deposition state that DuPont terminated her because she couldn't work 30 hours a week,[12] but she also testified that he initially requested 20 hours.[13]

Martinez-Arriaga initially submitted her proposed schedule on Paycom, requesting three shifts and a total of 20 hours.[14]  After learning that she might be left off DuPont's new schedule, she texted DuPont a different three-shift schedule with 24 hours per week.[15]  DuPont replied that he had "specifically requested" that she provide a schedule sooner, and he ultimately scheduled her to work just a single shift.[16]  Two days later, Martinez-Arriaga was called into DuPont's office for what she assumed would be a reprimand for arriving to work 15 minutes late.[17] Instead, according to Martinez-Arriaga, DuPont unceremoniously fired her, telling her to "[c]ome back after you have your baby."[18]  Her version of events is that DuPont told her that she was being fired because she couldn't work 30 hours per week, a requirement that he maintained

---

[11] *See* ECF No. 39 at 4 (stating that DuPont requested 20 hours and arguing that Martinez-Arriaga "vacillates between allegedly being required to work twenty or thirty hours"); *see also* ECF No. 55 at 6–7 n.2 (dismissing Briggs's "carp[ing]" about the hours requirement and stressing that her complaint, other pleadings, charge of discrimination, and some deposition answers stated that the requirement was 30 hours).

[12] ECF No. 39-19 at 2 (charge of discrimination); ECF No. 39-2 at 44:19–20 (Martinez-Arriaga testifying that DuPont "said that I was fired by not being able to work[] 30 hours a week").

[13] *Id.* at 20:13–14 (Martinez-Arriaga testifying that DuPont "just requested from everyone that he needed either three days of work or 20 hours").

[14] ECF No. 39-6 (Paycom entry screenshotted on October 24, 2021).

[15] ECF No. 39-7 (texts between Martinez-Arriaga and DuPont on October 28, 2021); ECF No. 55-3 at 15:25–16:4 (Martinez-Arriaga testifying that she had updated her hours on Paycom four days before being told by a coworker to text DuPont to get on the schedule).

[16] ECF No. 39-7 (texts between Martinez-Arriaga and DuPont on October 28, 2021); ECF No. 55-3 at 52 (Harmon Corner employee schedule for the week of October 25 to October 31).

[17] ECF No. 39-2 at 44:5–9.

[18] *Id.* at 44:19–24.

would apply to all Harmon Corner employees.[19]  But Martinez-Arriaga learned the very next day that DuPont was letting another bartender work just 20 hours per week,[20] and several other employees were scheduled to work less than 30 hours per week soon after her termination.[21]

Briggs takes the position that Martinez-Arriaga was "never officially terminated" because DuPont didn't prepare a termination form,[22] but it doesn't offer evidence contradicting her account of what DuPont said in that final meeting.[23]  It instead suggests that DuPont verbally terminated Martinez-Arriaga because of her "insubordination" in failing to immediately text him a proposed schedule.  As proof for this theory, Briggs points to Martinez-Arriaga's own deposition testimony, claiming that she testified that DuPont "advised [her] that she was being terminated for insubordination."[24]  The deposition transcript reflects no such thing.  The cited sentence actually reads, "[DuPont] said that I was fired by not being able to work[] 30 hours a week."[25]

An extended period of confusion followed Martinez-Arriaga and DuPont's October 30 meeting.  Martinez-Arriaga emailed Fat Tuesday's Director of Human Resources, Danielle Garrett, two days after that final meeting with DuPont, stating that she had been "terminated due

---

[19] ECF No. 55-3 at 20:19–21:2.

[20] *Id.* at 49.

[21] *See id.* at 53–61 (Harmon Corner employee schedules for the weeks of November 1, November 8, November 15, November 22, November 29, December 6, December 20, January 3, and January 10).

[22] ECF No. 39 at 6.

[23] *See generally* ECF No. 39.

[24] *Id.* at 6.

[25] ECF No. 39-2 at 44:19–20.  Characterizing this testimony as Martinez-Arriaga's confirmation that she was fired for insubordination crosses the line from negligent paraphrasing to bald misrepresentation.

to not being able to work 30 hours a week due to pregnancy."[26]  The two exchanged more emails later in November, both referencing a phone conversation in which Garrett told Martinez-Arriaga that she had not been terminated.[27]  Disjointed communication continued between Martinez-Arriaga and various Fat Tuesday representatives until the summer of 2022.[28][29]  While the parties dispute who is to blame, they agree that Martinez-Arriaga never worked another shift at Fat Tuesday after October 30, 2021.

In June 2022, Martinez-Arriaga filed a charge of discrimination with the U.S. Equal Opportunity Commission (EEOC) and Nevada Equal Rights Commission (NERC), alleging that DuPont had terminated her employment shortly after she informed him that she couldn't work more than 30 hours per week due to her pregnancy, while other non-pregnant employees were permitted to work less than 30 hours.[30]  She now sues for pregnancy discrimination under Nevada Revised Statutes (NRS) 613.310–345, hostile work environment, failure to reasonably accommodate her pregnancy, wrongful termination, intentional infliction of emotional distress (IIED), and negligent infliction of emotional distress (NIED).[31]  She seeks compensatory

---

[26] ECF No. 39-8 at 2 (Oct. 24–Nov. 1 email thread between Martinez-Arriaga and Garrett).

[27] ECF No. 39-13 (Nov. 30–Dec. 21 email thread between Martinez-Arriaga and Garrett).

[28] *See* ECF Nos. 39-14 (email from Martinez-Arriaga to Marcus Filardi), 39-15 (May 6, 2022, text message from Kylee Crockett to Martinez-Arriaga), 39-16 (email from Daniella Valles to Martinez-Arriaga), 39-17 (transcript of a voicemail left for Martinez-Arriaga by Valles), 39-18 (text messages between Crocket and Martinez-Arriaga).

[29] Martinez-Arriaga objects to ECF Nos. 39-15, 39-16, and 39-17.  ECF No. 55 at 25–26.  But I overrule those objections because they simply state rules of evidence without any supporting argument.  As the Ninth Circuit reasoned in *Sandoval v. County of San Diego*, the failure to explain "boilerplate" objections is fatal.  *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021).

[30] ECF No. 39-19 (charge of discrimination).

[31] ECF No. 1-1 at 6–10, ¶¶ 26–53.

damages, interest, attorney's fees, litigation costs, and any other relief this court may find

appropriate.[32]

Briggs moves for summary judgment in its favor on all of Martinez-Arriaga's claims. It

avers that she can't establish a prima facie pregnancy-discrimination claim because she hasn't

shown that similarly situated non-pregnant employees were treated differently, that her hostile-

work-environment and failure-to-accommodate claims fail because she did not exhaust

administrative remedies, that her wrongful-termination claim is barred by Nevada precedent, and

that her IIED and NIED claims fall short because she hasn't shown extreme and outrageous

conduct or any severe emotional distress.[33] Martinez-Arriaga responds that she has met every

element of a pregnancy-discrimination claim, that she exhausted administrative remedies for her

hostile-work-environment and failure-to-accommodate claims, that her wrongful-termination

claim is distinguishable from claims barred by Nevada case law, and that evaluating the severity

of her emotional distress should be left to the jury.[34] She also lodges more than 30 evidentiary

objections, though many of the pages to which she objects are not actually attached to Briggs's

summary-judgment motion.[35]

## Discussion

### A.    Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment

---

[32] *Id.* at 10.

[33] ECF No. 39 at 2.

[34] ECF No. 55 at 2–15.

[35] *See id.* at 21–26.

as a matter of law."[36]  If the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[37]  The movant only needs to defeat one element of a claim to obtain summary judgment because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[38]  The court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[39]

**B.  Genuine issues of material fact preclude summary judgment on Martinez-Arriaga's pregnancy-discrimination and failure-to-reasonably-accommodate claims, but Briggs wins summary judgment on all of her other claims.**

> **1.  *Summary judgment is not available on Martinez-Arriaga's pregnancy-discrimination claim because whether she was treated differently from similarly situated non-pregnant employees is genuinely disputed.***

Martinez-Arriaga claims that Briggs violated NRS 613.30–.345 by discriminating against her on the basis of sex and pregnancy.[40]  "Nevada's anti-discrimination statute . . . is almost identical to Title VII [of the 1964 Civil Rights Act], and courts apply the same analysis."[41]  The Supreme Court of Nevada has concluded that, like Title VII, Nevada's prohibition on sex discrimination applies to discrimination based on pregnancy.[42]  To allege a prima facie case of

---

[36] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[37] *Id.* at 323.

[38] *Id.* at 322.

[39] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[40] ECF No. 1-6 at 5.

[41] *Complete Care Med. Ctr. v. Beckstead*, 466 P.3d 538, at *1 (Nev. July 1, 2020) (unpub.) (cleaned up); *see also Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) (noting that the Nevada Supreme Court has "looked to the federal courts for guidance" when analyzing cases brought under Nevada's anti-discrimination statutes).

[42] *Complete Care Med. Ctr.*, at *1 (first citing 42 U.S.C. 2000e(k) ("The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy,

discrimination, a plaintiff must offer proof that (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she experienced an "adverse employment action;" and (4) she was treated differently than a similarly situated employee who was not part of the same protected class.[43] If these elements are met, the burden shifts to the defendant to show a "legitimate, nondiscriminatory reason" for its actions.[44] If the defendant provides such a reason, the burden returns to the plaintiff to show that the reason is "merely a pretext."[45]

Briggs contends that Martinez-Arriaga's pregnancy-discrimination claim fails at the fourth element because she can't show that similarly-situated employees who were not pregnant received better treatment.[46] And even if she could establish a prima facie case, it argues, there was a legitimate, non-discriminatory reason for her termination: she committed "insubordination" by failing to directly inform DuPont that her availability had changed.[47]

As proof of disparate treatment, Martinez-Arriaga submits Harmon Corner shift schedules for the weeks following her final meeting with DuPont, which show that several coworkers were granted the less-than-30-hours schedule that she was denied.[48] One of those

---

childbirth, or related medical conditions . . ."); then citing *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015) ("Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy.")).

[43] *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006); *City of North Las Vegas v. State Loc. Gov't Emp.-Mgmt. Rels. Bd.*, 261 P.3d 1071, 1078 (Nev. 2011).

[44] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *City of North Las Vegas*, 261 P.3d at 1078.

[45] *Patraw v. Groth*, 373 P.3d 949, at * 4 (Nev. Dec. 12, 2011) (unpub.); see also *McDonnell Douglas Corp.*, 411 U.S. at 804.

[46] ECF No. 39 at 20.

[47] *Id.* at 21; *see also id.* at 2 (explaining what behavior constituted insubordination).

[48] *See* 55-3 at 53–61 (schedules showing that employees Holly, Jaleesa, Alexis, and Adrian were, at least some weeks, scheduled for less than 30 hours).

employees, Jaleesa, who apparently began working at the Harmon Corner location shortly after Martinez-Arriaga was dismissed, was scheduled to work three shifts per week—exactly the number of shifts that Martinez-Arriaga unsuccessfully proposed for herself.[49]  Martinez-Arriaga also provides evidence that Dupont told her coworker Elizabeth Garner that she needed to work a minimum of just 20 hours per week at around the same time he allegedly dismissed Martinez-Arriaga for failing to submit at least 30 hours of availability.[50]

Two employees that Martinez-Arriaga points to as differently treated are Adrian Cross and Alexis Marks.[51]  Briggs contends that these employees were not similarly situated.[52]  Citing the declaration of Daniella Valles, a Briggs human-resources employee, it asserts that Cross had "limited availability" to work at Harmon Corner because he was simultaneously working at other Fat Tuesday locations.[53]  Martinez-Arriaga objects to portions of that declaration, including the paragraph asserting that Cross worked at multiple locations.[54]  She objects as hearsay under Rule 801 and as "Argumentative. Misleading the jury. 403 balancing []" under Rule 403.[55]  She also asserts without elaboration that the challenged paragraphs are "irrelevant and specifically intended to mislead the trier of fact."[56]

None of these objections has sufficient supporting arguments.  As other district courts within the Ninth Circuit have persuasively reasoned, "[o]bjections based on hearsay are

---

[49] *Id.* at 44, 53–61.

[50] ECF No. 55-3 at 49.

[51] ECF No. 39-2 at 64:14–19.

[52] ECF No. 39 at 20.

[53] *Id.* at 11 (citing ECF No. 39-22 at 2).

[54] ECF No. 55 at 26 (objecting to paragraphs 3, 4, and 5 of Valles's declaration).

[55] *Id.*

[56] *Id.*

particularly context-specific," and I am "not inclined to comb through these documents, identify potential hearsay, and determine if any exception applies—all without guidance from the parties."[57]  As for the Rule 403 objections, there is no explanation of how the paragraphs are "argumentative," the misleading-the-jury objection is an ill fit at this stage of the litigation, and the single sentence accompanying each cluster of objections does not establish that the probative value of the challenged paragraphs is substantially outweighed by any of the dangers listed by Rule 403.[58]  And to the extent that the "403 balancing" objection challenges the paragraphs' relevance, I am guided by the Ninth Circuit's reasoning that "parties briefing summary judgment motions would be better served to 'simply *argue*' the import of the facts reflected in the evidence rather than expending time and resources compiling laundry lists of relevance objections."[59]  So I overrule Martinez-Arriaga's objections to Valles's declaration.[60]

Briggs also avers that Marks and Cross properly submitted updated availability to DuPont and Martinez-Arriaga didn't.[61]  And it insists that Martinez-Arriaga's "insubordination" by submitting her hours through Paycom rather than sending them in a text message.[62]  Genuine disputes surround Martinez-Arriaga's insubordination for failing to give her availability to DuPont through some other method than updating her schedule in Paycom by his deadline. Briggs attempts to turn this around on Martinez-Arriaga, arguing that she doesn't recall whether

---

[57] *See, e.g., Gypsum Res., LLC v. Clark Cnty.*, 674 F. Supp. 3d 985, 1003 (D. Nev. 2023) (quoting *De Contreras v. City of Rialto*, 894 F. Supp. 2d 1238, 1245 (C.D. Cal. Sept. 2012)).

[58] *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).

[59] *Sandoval*, 985 F.3d at 665 (citation omitted).

[60] While Martinez-Arriaga objects to various other evidentiary items, I need not and do not resolve those objections because those evidentiary items have no bearing on my rulings here.

[61] ECF No. 39 at 11, 20.

[62] *Id.* at 2, 21.

DuPont told her that she need to inform him of her availability in a particular way.[63] But Briggs points to no evidence that Dupont did or did not tell her that Paycom was not a viable way to communicate with him before she updated her availability. The best it offers is deposition testimony from DuPont's manager Marcus Filardi, who said that DuPont complained to him that Martinez-Arriaga "did not make [him] aware of her availability."[64] This isn't enough for me to conclude that Martinez-Arriaga engaged in "insubordination" by updating her schedule in Paycom instead of giving those updates to DuPont directly.

So because Martinez-Arriaga's "insubordination" is genuinely disputed, whether Marks and Cross are differently situated because they were not insubordinate is disputed too.[65] And Briggs simply ignores the remaining evidence that several other employees were also allowed to work less than 30 hours.[66] Given the lack of clear differentiation between Martinez-Arriaga and her coworkers who were given reduced hours, there is a genuine issue as to whether similarly situated coworkers received better treatment than Martinez-Arriaga. So her pregnancy-discrimination claim survives summary judgment.

---

[63] *Id.* at 4, 20.

[64] ECF No. 39-5 at 7:12–13.

[65] Even if I credit Briggs's contention that Cross isn't similarly situated because he had different scheduling requirements due to his employment at multiple branches, that leaves several other employees who may be similarly situated and differently treated.

[66] Briggs briefly notes that Jaleesa was never scheduled to work on Tuesday—one of the days that Martinez-Arriaga offered to work—but doesn't explain why this distinction means the two are not similarly situated. ECF No. 39 at 11.

### 2. *Briggs is entitled to summary judgment on the hostile-work-environment claim because Martinez-Arriaga hasn't provided evidence of severe or pervasive harassment.*

Briggs argues that Martinez-Arriaga's hostile-work-environment claim is barred because she failed to exhaust her administrative remedies.[67] It adds that even if she had, the claim fails for lack of "verbal or physical conduct of a sexual nature."[68] Martinez-Arriaga insists that she has exhausted her administrative remedies because her "hostile work environment claim based on pregnancy-related conditions" is reasonably related to the pregnancy discrimination she alleged in her charge of discrimination.[69] And she avers that whether the defendants' conduct satisfies the elements of a hostile-work-environment claim is a question for the jury.[70]

### a. *Martinez-Arriaga exhausted her administrative remedies for her hostile-work-environment claim because it is reasonably related to the allegations in her employment-discrimination charge.*

Generally, litigants bringing employment-discrimination claims under Nevada law must exhaust their administrative remedies before initiating a lawsuit by timely filing an employment-discrimination charge with NERC before bringing a civil suit.[71] A claim included in the subsequent lawsuit must be "like or reasonably related" to the allegations contained in that charge of discrimination.[72] The Ninth Circuit has found that claims are "reasonably related to

---

[67] ECF No. 39 at 13.

[68] *Id.* at 14.

[69] ECF No. 55 at 12.

[70] *Id.*

[71] *Palmer v. State*, 787 P.2d 803, 804 (Nev. 1990); *see Pope*, 114 P.3d at 280.

[72] *Id.* at 312.

allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case."[73]

Martinez-Arriaga's charge of discrimination states that she suffered "unequal terms and conditions of employment" and was fired after telling DuPont that she had to work less than 30 hours a week "due to [her] pregnancy status."[74]  Her hostile-work-environment claim is based on "unwelcome statements and conduct based on her availability as a result of her pregnancy-related conditions."[75]  The nexus of both is Briggs's allegedly discriminatory treatment of Martinez-Arriaga due to her pregnancy.  So I find that the hostile-work-environment claim is consistent with Martinez-Arriaga's original theory of the case and she has thus sufficiently exhausted her administrative remedies in order to now pursue it.

> **b.**    *Martinez-Arriaga's evidence is insufficient to establish a genuine issue of hostile conduct.*

The parties' dispute over whether Martinez-Arriaga can establish her hostile-work-environment claim begins with a disagreement about the required elements of this claim.  Briggs insists that "verbal or physical conduct of a sexual nature" is a necessary element of this claim and that Martinez-Arriaga has no evidence of that.[76]  She retorts that "sexual harassment in a more conventional sense" is not a required element of a hostile-work-environment claim, and

---

[73] *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) *abrogated on other grounds by Fort Bend Cnty., Texas v. Davis,* 587 U.S. 541 (2019)).

[74] ECF No. 39-19 at 2.

[75] ECF No. 101 at 7, ¶ 33.

[76] ECF No. 39 at 13–14.

that the negative treatment she experienced as a result of her pregnancy is sufficient to support the claim.[77]

As with the pregnancy-discrimination analysis, I follow the Nevada Supreme Court's conclusion that courts can look to federal precedent for guidance when evaluating Nevada employment-discrimination claims.[78]  A plaintiff must show that she was "subjected to verbal or physical harassment that was sexual in nature, that the harassment was unwelcome, and that the harassment was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment" to prevail on a hostile-work-environment claim.[79]  To evaluate whether that discriminatory conduct is severe or pervasive, courts consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[80]  "[T]he plaintiff must show that her work environment was both subjectively and objectively hostile; that is, she must show that she perceived her work environment to be hostile, and that a reasonable person in her position would perceive it to be so."[81]  And the Supreme Court of the United States has held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" aren't enough to establish an abusive work environment.[82]

---

[77] ECF No. 55 at 12.

[78] *See supra* at p. 7.

[79] *Dawson v. Entek Int'l*, 630 F.3d 928, 937–38 (9th Cir. 2011) (cleaned up).

[80] *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (cleaned up).

[81] *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005).

[82] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (cleaned up).

1    Missing from Martinez-Arriaga's hostile-work-environment claim is evidence that this

2  was anything but an isolated incident.  *Dominguez-Curry v. Nevada Transportation Department*

3  offers a helpful contrast to highlight this fatal deficiency.[83]  In that case, a Ninth Circuit panel

4  reversed a trial court's decision to summarily dispose of an employee's claims for hostile work

5  environment and failure to promote on the basis of gender.[84]  The female employee alleged that

6  her male supervisor routinely made derogatory comments about women in their workplace,

7  including that he wished men were doing their jobs and that "women should only be in

8  subservient positions," and complaining about the frequency at which female employees became

9  pregnant.[85]  His remarks included that women with young children had no business working and

10  telling the plaintiff that he planned to force an employee who had recently returned from

11  maternity leave to travel for work because "I want her out."[86]  The *Dominguez-Curry* panel

12  concluded that the frequency of the supervisor's "repeated derogatory and humiliating remarks"

13  made the situation more than "isolated, sporadic incidents" that would be insufficient to support

14  a hostile-work-environment claim.[87]

15    The record here lacks such frequency, repetition, or severity.  Martinez-Arriaga claims

16  that DuPont's poor treatment of her was not limited to telling her to come back after she had her

17  baby, but she doesn't identify any other problematic pregnancy-related incidents.[88]  And her

18  deposition testimony makes clear that she doesn't believe anyone else at Fat Tuesday

19

20  [83] *Dominguez-Curry*, 424 F.3d 1027.

21  [84] *Id.* at 1042.

    [85] *Id.* at 1031.

22  [86] *Id.* at 1031–32.

23  [87] *Id.* at 1036.

    [88] ECF No. 55 at 13.

discriminated against her based on her pregnancy—she confirmed that she never heard anyone at Fat Tuesday make "any negative or derogatory comments" about gender or pregnancy.[89]  In an email to Danielle Garrett two days after the final DuPont meeting, Martinez-Arriaga wrote that DuPont "was not rude to me when terminating me . . . but he certainly spoke to me in a condescending way."[90]  That she would not say the interaction rose to the level of rudeness, even in the immediate aftermath, supports the inference that this incident wasn't so "extremely serious" that it overcomes the Supreme Court's presumption that an isolated incident cannot establish a hostile work environment.[91]  So I grant summary judgment in favor of Briggs on the hostile-work-environment claim.

### 3. Summary judgment is not available on Martinez-Arriaga's failure-to-reasonably-accommodate claim because there is a genuine issue as to whether she requested a reasonable pregnancy-related accommodation.

In her third claim for relief, Martinez-Arriaga claims that Briggs failed to reasonably accommodate her pregnancy.  Briggs contends that this claim, too, is barred by a failure to exhaust administrative remedies.[92]  It argues in the alternative that summary judgment is appropriate as Martinez-Arriaga never requested a pregnancy-based accommodation because she merely expressed a "personal preference" to work less than 30 hours per week that "had nothing to do with her pregnancy."[93]  Martinez-Arriaga characterizes the administrative-exhaustion argument as a "technical gotcha" and argues that any evidence that her scheduling request was

---

[89] ECF No. 39-2 at 17.  *See also id.* at 11 (stating that, besides feeling that human resources did not "help [her] how they should have," she doesn't believe that anyone but DuPont treated her inappropriately).

[90] ECF No. 55-3 at 87.

[91] *Faragher*, 524 U.S. at 788.

[92] ECF No. 39 at 15.

[93] *Id.*

not pregnancy related simply creates a genuine dispute of material fact that must be decided by the jury.[94]

> a.    *Martinez-Arriaga exhausted her administrative remedies for her failure-to-reasonably accommodate claim because it is reasonably related to the allegations in her employment-discrimination charge.*

Martinez-Arriaga's charge of discrimination recounts that DuPont requested that she work at least 30 hours per week, she told him that she needed fewer hours due to her pregnancy, and he then terminated her days later, saying that she was losing her job because she couldn't work more than 30 hours.[95]  Her complaint alleges that Briggs failed to reasonably accommodate Martinez-Arriaga's pregnancy by requiring her to work at least 30 hours per week and eventually terminating her employment.[96]  The phrasing of the two documents is marginally different but their narratives are fundamentally the same.  So I find that Martinez-Arriaga exhausted her administrative remedies for her failure-to-accommodate claim because it is reasonably related to the allegations in her charge of discrimination.

> b.    *Martinez-Arriaga offers sufficient evidence that she requested an accommodation to establish a genuine dispute.*

Nor is Briggs entitled to summary judgment on this failure-to-accommodate claim based on a failure to request a pregnancy-related accommodation.  For this argument, Briggs relies on portions of Martinez-Arriaga's deposition in which she agrees with an attorney's statements that she "never asked anyone for accommodation" and that it was her "preference" to work less than 30 hours per week.[97]  The concession that she didn't formally ask for an "accommodation"

---

[94] ECF No. 55 at 10–11.

[95] ECF No. 39-19 at 2.

[96] ECF No. 1-1 at 8, ¶ 38–39.

[97] ECF No. 39 at 15; ECF No. 39-2 at 45, 74, 76.

doesn't necessarily undermine this claim because, as a non-lawyer, Martinez-Arriaga is unlikely to have a detailed understanding of what constitutes an accommodation under Nevada law. And her acknowledgement that working less than 30 hours was her preference isn't enough to foreclose any reasonable juror from concluding that she requested a pregnancy-related accommodation.

The Nevada Pregnant Workers' Fairness Act (NPWFA) requires that "[i]f a female employee requests an accommodation for a condition of the employee relating to pregnancy, childbirth or a related medical condition, the employer and employee must engage in a timely, good faith and interactive process to determine an effective, reasonable accommodation for the employee."[98] The statute lists "a modified work schedule" as a possible reasonable accommodation.[99] It also prohibits employers from retaliating against employees who request or use reasonable pregnancy-related accommodations.[100]

There is evidence in the record that Martinez-Arriaga asked for a pregnancy-related accommodation. In emails to HR Director Danielle Garrett, Martinez-Arriaga explained that she was pregnant and doing her best to accommodate the demands of "new managers" and that she would have "gladly provided" DuPont with a doctor's note explaining the pregnancy-related conditions that prevented her from working 30 hours.[101] And she testified that she asked Dupont if she could keep her Saturday shift until going on maternity leave because she was "planning on giving birth soon."[102] So whether her request to work less than 30 hours per week was a demand

---

[98] Nev. Rev. Stat. § 613.4371.

[99] Nev. Rev. Stat. § 613.4371(3)(g).

[100] Nev. Rev. Stat. § 613.438(1)(b).

[101] ECF No. 39-8 at 2, 3 (Oct. 24–Nov. 1 email thread between Martinez-Arriaga and Garrett).

[102] ECF No. 55-3 at 17:23–18:3.

for a reasonable pregnancy-related accommodation under the NPWFA is a disputed question for the jury to answer.

### 4. Martinez-Arriaga's wrongful-termination claim is barred by Nevada precedent because a statutory remedy is available.

Briggs next argues that Martinez-Arriaga's wrongful-termination claim fails because Nevada courts have rejected "tort claims premised on illegal employment actions" as there are statutory claims available to redress such conduct.[103] Martinez-Arriaga responds that Briggs wrongly presumes that an adequate statutory remedy is available.[104] And, she adds, she has every right to plead alternative theories of recovery.[105]

The Nevada Supreme Court has repeatedly barred employees from bringing common-law wrongful-termination claims when there is existing Nevada law "addressing the same subject matter."[106] A notable example is *Sands Regent v. Valgardson*, in which the Court found that common-law age-discrimination claims, including a wrongful-termination claim, were "unsupportable" because the Nevada legislature had already enacted statutes setting the scope of available remedies.[107] The Court later clarified that the *Sands Regent* decision did not allow for "*additional* court-created remedies . . . [to] arise out of age-based wrongful discharge for which tort recovery is available by statute."[108] The Ninth Circuit has applied *Sands Regent* to bar wrongful-termination claims, reasoning that "Nevada's public policy against impermissible

---

[103] ECF No. 39 at 19 (quoting *Levy v. Mandalay Bay Corp.*, 2015 WL 3629633, at *3 (D. Nev. June 10, 2015)).

[104] ECF No. 55 at 15.

[105] *Id.*

[106] *Ceballos v. NP Palace, LLC*, 514 P.3d 1074, 1079 (Nev. 2022).

[107] *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989).

[108] *D'Angelo v. Gardner*, 819 P.2d 206, 217 n.10 (Nev. 1991).

1  discrimination cannot be vindicated through a tortious-discharge public-policy tort, but rather,

2  must be pursued through statutory remedies."[109]

3      *Canada v. Boyd Group, Inc.*, a 1992 case from another judge in this district, illustrates

4  how the *Sands Regent* rationale applies here and bars Martinez-Arriaga's wrongful-termination

5  tort claim.[110]  In *Canada*, a poker dealer sued her former employer for wrongful termination and

6  related claims, all of which arose from the sexual harassment that her manager allegedly

7  subjected her to, including comments on her physical appearance and unwanted physical

8  contact.[111]  The judge granted summary judgment on the wrongful-termination claim, noting

9  Nevada's "strong policy against sexual discrimination in an employment setting," but reasoning

10  that, like in *Sands Regent*, there were "numerous statutory remedies available."[112]  Even though

11  the plaintiff hadn't yet received any compensation, the judge explained, "it is the availability of

12  damages that controls the outcome of this determination, not the success of the plaintiff in

13  obtaining those damages."[113]

14      Martinez-Arriaga similarly has statutory remedies available for seeking damages for her

15  alleged wrongful termination.  She acknowledged this in her wrongful-termination claim when

16  alleging that Briggs's actions were "contrary to substantial and fundamental public policies

17  delineated in both state and federal laws, including but not limited to Nevada's EEO Laws and

18  the Nevad[a] Pregnant Workers' Fairness Act."[114]  Martinez-Arriaga argues that the NPWFA

19

20  [109] *Herman v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 971*, 60 F.3d 1375, 1385 (9th Cir. 1995) (cleaned up) (citing *Sands Regent*, 777 P.2d at 900).

21  [110] *Canada v. Boyd Grp., Inc.*, 809 F. Supp. 771 (D. Nev. 1992).

   [111] *Id.* at 773–74.

22  [112] *Id.* at 782.

23  [113] *Id.* (cleaned up).

   [114] ECF No. 1-1 at 8, ¶ 44.

cannot bar her claim because its statutory text doesn't expressly address termination of pregnant employees.[115]  But she doesn't deny the applicability of the "EEO Laws" that she cited in her own complaint, and the NPWFA actually does address pregnancy-based termination as it expressly prohibits "adverse employment action" against employees who request pregnancy-related accommodations.[116]  The availability of these statutory remedies is enough to preclude Martinez-Arriaga's common-law wrongful-termination claim under *Sands Regent* and its progeny.  So I grant summary judgment in favor of Briggs on the wrongful-termination claim.

### 5. *Briggs is entitled to summary judgment on the IIED claim because Martinez-Arriaga hasn't established extreme and outrageous conduct.*

In her fifth cause of action, Martinez-Arriaga asserts an IIED claim.  Briggs contends that it's entitled to summary judgment on this claim because the conduct here isn't extreme and outrageous.[117]  It also asserts that Martinez-Arriaga hasn't experienced sufficient emotional distress to support this claim, noting that she hasn't sought help from a mental-health professional or been prescribed any medications to treat her distress.[118]  Martinez-Arriaga's only response is that the jury should be allowed to determine whether the Briggs's conduct was outrageous and whether she suffered severe emotional distress.[119]

The Nevada Supreme Court has held that "the tort of intentional infliction of emotional distress is recognizable in the employment termination context."[120]  To prove such an IIED

---

[115] ECF No. 55 at 14.

[116] *See* Nev. Rev. Stat. § 613.438(1)(b) (specifying that the list of adverse employment actions is not exhaustive).

[117] ECF No. 39 at 17.

[118] *Id.*

[119] ECF No. 55 at 15.

[120] *Shoen v. Amerco, Inc.*, 896 P.2d 469, 476 (Nev. 1995).

claim, a plaintiff must show "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) [that she] suffered severe or extreme emotional distress and (3) actual or proximate causation."[121]  To meet the first prong, the challenged conduct must be "beyond the bounds of decency" and "utterly intolerable in a civilized community."[122]  "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient to establish IIED.[123]

Martinez-Arriaga's IIED claim fails at the outrageous-conduct prong.  She alleges that the defendants' conduct "was extreme and outrageous with the intention of, or reckless disregard for, causing emotional distress," but she doesn't explain why or how,[124] and her opposition to summary judgment offers little clarity.[125]  The exhibits she attaches to her opposition show that DuPont introduced himself, saying he was there to "shake shit up,"[126] that they then exchanged brief texts about scheduling,[127] and, in their final meeting, DuPont terminated her employment, saying "[c]ome back after you have your baby."[128]  Martinez-Arriaga stated to NERC that she and DuPont did not have multiple meetings to discuss her schedule, only that "single top-down discussion."[129]  She described DuPont's behavior in the termination meeting as "condescending"

---

[121] *Id.*

[122] *Abrams v. Sanson*, 458 P.3d 1062, 1069 (Nev. 2020); *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998).

[123] *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992) (per curiam) (citation omitted).

[124] ECF No. 1-1 at 9, ¶ 48.

[125] *See* ECF No. 55 at 15.

[126] ECF No. 55-3 at 6–7.

[127] *Id.* at 48.

[128] *Id.* at 17, 20.

[129] *Id.* at 38.

but "not rude" shortly after the meeting.[130]  When later asked what DuPont had said or done to be condescending, she said "[j]ust his demeanor."[131]

These details fall far short of extreme and outrageous conduct.  And without extreme and outrageous conduct, Martinez-Arriaga cannot support her IIED claim.  So I grant summary judgment in favor of Briggs on this claim.

### 6.    *Martinez-Arriaga hasn't provided evidence of physical impact or serious emotional distress, so summary judgment is also appropriate on her NIED claim.*

Martinez-Arriaga's sixth and final claim is for NIED.  Briggs argues that this claim fails because she hasn't alleged any physical symptoms or established that she actually suffered severe emotional distress.[132]  Once again, Martinez-Arriaga's only rejoinder is that the severity of her emotional distress should be determined by a jury.[133]

An NIED claim by a direct victim under Nevada law has the same elements as an IIED claim, "except that the plaintiff need only show that the acts causing distress were committed negligently."[134]  So a direct-victim NIED claim requires negligence by the defendant, "severe or extreme emotional distress" suffered by the plaintiff, and actual or proximate causation.[135]  "For NIED claims brought for negligent actions committed directly against a plaintiff, 'either a

---

[130] *Id.* at 87.

[131] *Id.* at 22.

[132] ECF No. 39 at 18.

[133] ECF No. 55 at 15.

[134] *Armstrong v. Reynolds*, 22 F.4th 1058, 1081 (9th Cir. 2022).

[135] *Shoen*, 896 P.2d at 476; *see also Armstrong*, 22 F.4th at 1082.

1   physical impact must have occurred or . . . proof of serious emotional distress causing physical

2   injury or illness must be presented.'"[136]

3          Martinez-Arriaga's alleged harms don't include physical injury.[137]  And while her

4   complaint states that her emotional distress "is manifested by the physical symptoms of severe

5   panic attacks and anxiety,"[138] her opposition to the motion for summary judgment offers no

6   evidence of those physical symptoms.[139]  Because Martinez-Arriaga has failed to support this

7   required element of her NIED claim, I grant summary judgment on it in favor of Briggs.

8   **C.    Martinez-Arriaga's request for leave to amend fails for a multitude of reasons.**

9          In the final sentence of her opposition to summary judgment, Martinez-Arriaga argues

10  that she "should be granted leave to amend her causes of action if the Court finds any

11  deficiencies."[140]  At summary judgment, this is not a thing.  The Ninth Circuit has noted that "[a]

12  motion for leave to amend is not a vehicle to circumvent summary judgment."[141]  But even if it

13  could be, it's too late for amendment now.  The parties' agreed-upon February 7, 2024, deadline

14  to file motions to amend pleadings has long since passed.[142]  This offhand amendment request is

15  also procedurally improper because Martinez-Arriaga didn't file a separate motion for leave to

16  amend as required by Local Rule IC 2-2(b),[143] nor has she provided a proposed amended

17

---

18  [136] *Id.* (quoting *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998)).

19  [137] *See generally* ECF No. 1-1 (complaint), ECF No. 39-19 (charge of discrimination), ECF No. 55 (opposition to motion for summary judgment).

20  [138] ECF No. 1-1 at 10, ¶ 53.

     [139] *See* ECF No. 55 at 15.

21  [140] *Id.* at 27.

22  [141] *Schlacter-Jones v. Gen. Tel. of California,* 936 F.2d 435, 443 (9th Cir. 1991), *abrogated on other grounds by Cramer v. Consol. Freightways Inc.,* 255 F.3d 683 (9th Cir. 2001).

23  [142] ECF No. 24 at 7.

     [143] L.R. IC 2-2(b).

complaint as required by Local Rule 15-1.[144]  Any of these reasons is enough alone to deny leave to amend.  Together they compel a resounding no.  Leave to amend is denied.

**Conclusion**

IT IS THEREFORE ORDERED that Briggs Management LLC and Briggs Management Inc.'s motion for summary judgment **[ECF No. 39] is GRANTED in part and DENIED in part:** it is granted as to plaintiff Jessica Martinez-Arriaga's claims for hostile work environment, wrongful termination, intentional infliction of emotional distress, and negligent infliction of emotional distress; it is denied in all other respects.  **So this case proceeds to trial on Martinez-Arriaga's claims for pregnancy discrimination and failure to reasonably accommodate only.**

IT IS FURTHER ORDERED that **this case is REFERRED** to the magistrate judge to schedule a **MANDATORY SETTLEMENT CONFERENCE.**  The parties' obligation to file their joint pretrial order is **STAYED until 10 days after that settlement conference.**

_____
U.S. District Judge Jennifer A. Dorsey
March 14, 2025

---

[144] L.R. 15-1(a).